UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**AMERICAN TORCH TIP COMPANY,**

      **Plaintiff,**

**v.**                              **Case No.: 8:11-CV-0202-T-23EAJ**

**DYKEMA GOSSETT PLLC, et al.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Before the court are Defendant Allen J. Sternstein's **Motion to Dismiss for Lack of Personal Jurisdiction** (Dkt. 15), Plaintiff's **Response** (Dkt. 18), and Defendant's **Reply** (Dkt. 25).[1] For the reasons stated below, the undersigned recommends that the motion to dismiss be granted.

## Standard of Review

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (citation and internal quotation marks omitted). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." Id. (citation and internal quotation marks omitted). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Id. (citation and internal quotation marks omitted).

---

[1] The District Judge has referred the motion to the undersigned for a report and recommendation (Dkt. 28).

With this standard in mind, the court reviews the complaint's allegations, as well as the affidavits submitted in connection with the motion to dismiss.

## Plaintiff's Allegations

Plaintiff is a Florida corporation that produces replacement torch tips and consumables for cutting and welding applications (Dkt. 1 ¶ 2).  In or around October 2005, a non-party to this suit filed patent infringement claims against Plaintiff in the United States District Court for the District of New Hampshire ("the underlying suit") (Id. ¶ 8).

At the time, Defendants Dykema Gossett PLLC ("Dykema") and Allen J. Sternstein ("Sternstein") were representing Plaintiff in other legal matters (Id. ¶ 6(c)).  Dykema, which advertises itself as a leading national law firm with clients throughout the United States, has a place of business in Chicago, Illinois (Id. ¶ 3).  Sternstein, the director of Dykema's Intellectual Property Litigation Department, has a primary place of business in Dykema's Chicago office (Id. ¶¶ 4, 11). Defendants[2] advertise that they are equipped to handle intellectual property matters throughout the United States and that Dykema's litigators are licensed in jurisdictions throughout the United States (Id. ¶ 6(a)-(b)).

Defendants agreed to represent Plaintiff in the underlying suit pursuant to a contract that Plaintiff executed in Florida (Id. ¶ 6(e)).  Plaintiff received Defendants' invoices in Florida and paid them from Florida (Id. ¶ 7(d)).

During the representation, Defendants sent Plaintiff discovery to sign or approve and traveled to Florida to prepare Plaintiff's defenses (Id. ¶ 6(d), (g)). However, Defendants allegedly failed to

---

[2] Plaintiff routinely refers to "Defendants" in its allegations, making it difficult to discern whether the allegations pertain to Dykema, Sternstein, or both.  This usage, however, is not material to the issues presented in the motion, for the reasons stated hereafter.

secure evidence located in Florida from Plaintiff and, consequently, did not utilize that evidence in Plaintiff's defense (Id. ¶ 6(h)).  This and other instances of Defendants' negligent representation eventually caused Plaintiff to settle the underlying suit on unfavorable terms (Id. ¶¶ 15-42).

Plaintiff's sole claim against Sternstein is for legal malpractice (Id. ¶¶ 43-46).  Plaintiff seeks to recover attorney's fees and costs, compensation paid pursuant to the settlement, and lost damages it might have recovered on its counterclaim had it not settled (Id. ¶ 46).

### Sternstein's Affidavit Evidence

Sternstein practices law in Dykema's Chicago office (Dkt. 16 ¶ 3).  He is not licensed to practice law in any state other than Illinois (Id. ¶ 4).

At the time the underlying suit was filed, Sternstein was representing Plaintiff in another matter pending in Michigan (Id. ¶ 6).  However, Plaintiff contacted an attorney in Dykema's Bloomfield Hills, Michigan office to solicit Dykema's representation in the underlying suit (Id. ¶ 5).

Although Sternstein supervised the underlying suit, which did not involve Florida law, and consulted other Dykema attorneys assigned to it, he was not a party to Plaintiff's contract with Dykema and did not handle the day-to-day representation (Id. ¶¶ 7-8, 11).  He did not prepare any discovery responses filed in the underlying suit, did not send discovery responses to Plaintiff for signature, and was not in charge of gathering documents from Plaintiff (Id. ¶¶ 9-10).  Over a period of approximately eighteen months, Sternstein emailed Plaintiff approximately ten times, telephoned Plaintiff fewer than twenty-five times, and traveled to Florida to meet with Plaintiff twice (Id. ¶ 12).

### Plaintiff's Affidavit Evidence

Jeffrey K. Walters ("Walters") is Plaintiff's Vice President (Dkt. 18 Ex. 2 ¶ 2).  In 2005,

Walters chose Sternstein to represent Plaintiff in a patent infringement action (not the underlying suit) because of Sternstein's reputation and credentials (Id. ¶ 5).  From Florida, Walters telephoned Sternstein for an initial consultation (Id. ¶ 6).  Walters accepted Sternstein's offer to assume primary responsibility for representing Plaintiff in that suit (Id. ¶ 7).

A few months later, Plaintiff was served with the claims in the underlying suit (Id. ¶ 8). Walters telephoned Sternstein to determine Sternstein's interest in representing Plaintiff in that suit (Id.). Walters accepted Sternstein's offer to assume primary responsibility for representing Plaintiff (Id. ¶ 9).

In the course of that representation, Sternstein met with Walters in Florida, called Walters in Florida, and wrote/emailed Walters in Florida (Id. ¶ 10).  Walters and Sternstein discussed the enforceability of a prior settlement agreement, the production of discovery, and the retention of an expert witness (Id. ¶ 11).  Sternstein sent Plaintiff invoices that billed for reviewing and revising discovery responses, conferring with other attorneys, handling discovery matters, and drafting correspondence regarding discovery matters and strategy (Id. ¶ 16).  Plaintiff paid Dykema more than one millions dollars for representation in the underlying suit, which lasted almost three years (Id. ¶ 15).  The underlying suit resulted in millions of dollars in damages to Plaintiff as well as lost market share (Id. ¶ 13).

In May 2011, after reviewing Dykema's website, Walters determined that Sternstein represented at least three other corporations registered in Florida or with offices in Florida (Dkt. 24 ¶¶ 5-7).

### Sternstein's Supplemental Affidavit Evidence

Plaintiff contacted Adam Strauss, an attorney in Dykema's Bloomfield Hills, Michigan office

who was representing Plaintiff in another matter, to solicit Dykema's representation in the underlying suit (Dkt. 26 ¶ 6).[3]  In the course of representing Plaintiff in the underlying suit, Sternstein did not tell Walters that a prior settlement could not be challenged, send discovery responses to Walters for signature, or direct Walters to select a particular expert (Id. ¶ 3).  Plaintiff paid Dykema, not Sternstein, for attorney's fees and costs incurred during the underlying suit (Id. ¶ 4).

Although Sternstein represented three corporations that Walters asserts are registered in Florida or have offices in Florida, in the course of these representations Sternstein did not travel to Florida, work for or with anyone in these corporations' Florida offices, or otherwise come into contact with Florida (Id. ¶ 7).

## Analysis

Sternstein submits that he should be dismissed from this case because this court lacks personal jurisdiction over him.  Plaintiff responds that Sternstein has waived any objection to personal jurisdiction and, alternatively, that Sternstein is subject to personal jurisdiction in Florida. As the material facts stated in the parties' affidavits are reconcilable and do not conflict with Plaintiff's jurisdictional allegations, Sternstein's motion can be resolved without an evidentiary hearing.[4]  See Delong Equipment Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988) (citations omitted).

---

[3] Strauss billed for work on the underlying suit as early as March 3, 2006, while Sternstein billed for work as early as March 29, 2006 (Dkt. 26 Ex. A).

[4] The conflicting assertions as to whether Walters initially contacted Strauss or Sternstein in connection with the underlying suit do not warrant an evidentiary hearing as the court's analysis would remain the same regardless of which assertion it accepted as true.

## I.    <u>Waiver</u>

Plaintiff contends that Sternstein waived any objection to this court's personal jurisdiction by appearing and filing a joint case management report in this matter, participating in the case management conference, and moving for reconsideration of the case management and scheduling order.

Two weeks after Plaintiff filed its complaint, Defendants' counsel filed notices of appearances on behalf of both Dykema and Sternstein (Dkt. 4, 5).  The parties then filed a case management report that did not raise Sternstein's jurisdictional objection.  Less than two weeks later, they jointly moved for reconsideration of the case management and scheduling order, noting that Dykema would file an answer to the complaint while Sternstein would move to dismiss for lack of personal jurisdiction (Dkt. 12 ¶ 2).  Sternstein filed the instant motion five days later, his first motion under Fed. R. Civ. P. 12, and has not yet filed a pleading addressing the merits of Plaintiff's claims.

"While it is true that the defense of lack of personal jurisdiction can be waived by filing a motion which does not raise the defense, Fed. R. Civ. P. 12(h)(1), waiver is only accomplished if the defense is not asserted in the first motion made under Rule 12 or responsive pleading."  <u>Lane v. XYZ Venture Partners, L.L.C.</u>, 322 F. App'x 675, 678 (11th Cir. 2009) (per curiam) (unpublished) (citing Fed. R. Civ. P. 12(g)(2), (h)(1)(B)); <u>see</u> <u>also</u> <u>Diamond Crystal Brands</u>, 593 F.3d at 1256 n.5.  Neither the notices of appearances nor the case management report waived personal jurisdiction because neither is a motion under Rule 12 or a responsive pleading.  <u>See</u> <u>Jones-Rankins v. Cardinal Health, Inc.</u>, No. CV 10–01626–PHX–FJM, 2011 WL 1253257, at *2 (D. Ariz. Apr. 4, 2011).  Further, although the case management report did not raise Sternstein's objection,

Defendants' counsel maintain that the case management conference proceeded with the understanding that Sternstein would move to dismiss for lack of personal jurisdiction.  Given that counsel represent both Sternstein and Dykema (which intends to file an answer to the complaint), participation by counsel in the case management conference,  subject to an understanding that Sternstein would move for dismissal, was not a waiver of Sternstein's right to do so.[5]  Finally, the joint motion for reconsideration hardly operated as a waiver as it affirmed Sternstein's intent to move for dismissal on jurisdictional grounds.  Considering the circumstances as a whole, Sternstein has not waived his right to challenge the court's jurisdiction over him.

## II.    Personal Jurisdiction

The exercise of personal jurisdiction over a nonresident is proper only if: (1) the forum state's long-arm statute confers jurisdiction; and (2) assuming jurisdiction would not "offend traditional notions of fair play and substantial justice."  PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 807 (11th Cir. 2010) (citation and internal quotation marks omitted). The second step is analyzed only if the long-arm statute provides for jurisdiction.  Id.  A court must strictly construe the long-arm statute in assessing whether a plaintiff has satisfied its burden of producing affidavits, documents, or testimony that overcome a defendant's evidence challenging personal jurisdiction.  Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996) (citations omitted).

---

[5] Plaintiff submits that a finding of waiver is appropriate pursuant to National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Beta Construction, LLC, No. 8:10-cv-1541-T-26TBM, 2010 WL 4316573 (M.D. Fla. Oct. 26, 2010), which held that personal jurisdiction was waived where the defendant entered an appearance and participated in a case management conference without objecting to the court's personal jurisdiction.  Id. at *1.   The facts of that case, however, do not suggest that the defendant preserved an objection to personal jurisdiction during the case management conference.

Plaintiff contends that Sternstein is subject to personal jurisdiction under section 1(b) of Florida's long-arm statute, Fla. Stat. § 48.193, which provides for jurisdiction over a nonresident who "commit[s] a tortious act within [Florida]."  Specifically, Plaintiff submits that Sternstein committed legal malpractice in Florida via interstate communications and personal visits to Florida. Plaintiff correctly points out that "telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b) if the alleged cause of action arises from the communications," Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002), and that section (1)(b) can confer jurisdiction over a nonresident defendant whose out-of-state tort causes injury in Florida.  See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 257 (11th Cir. 1996).

Nonetheless, section 1(b) does not confer jurisdiction on all occasions where a nonresident defendant's out-of-state tort causes injury in Florida, but only "in certain instances."  Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1168 & n.7 (11th Cir. 2005) (citing Korman v. Kent, 821 So. 2d 408, 411 (Fla. 4th DCA 2002)).  "While a defendant's physical presence in the state is not required, it is not, however, enough that the actions of a defendant committed outside of Florida ultimately have consequences in Florida.....  Instead, his actions must directly cause injury or damage within the state." Blumberg v. Steve Weiss & Co., 922 So. 2d 361, 364 (Fla. 3d DCA 2006) (citing Korman, 821 So. 2d at 410-11).  Because the complaint and the parties' affidavits do not indicate that Sternstein's alleged malpractice directly caused injury or damage to Plaintiff within Florida, Plaintiff's cited cases are inapposite.

In Robinson, for instance, a Florida plaintiff alleged that nonresident attorneys negligently drafted a will and trust documents.  74 F.3d at 257.  Emphasizing that the attorneys intended for these documents to be administered in Florida under Florida law, the court found that section 1(b)

conferred jurisdiction because the attorneys' alleged malpractice damaged a Florida estate.   Id. Here, by contrast, Sternstein's representation of Plaintiff in the underlying suit did not involve the application of Florida law or the creation of an entity under Florida law.   See Harris v. Shuttleworth & Ingersoll, P.C., 831 So. 2d 706, 708-09 (Fla. 4th DCA 2002) (distinguishing Robinson on similar grounds).

In Kim v. Keenan, 71 F. Supp. 2d 1228 (M.D. Fla. 1999), Florida plaintiffs retained Georgia attorneys in connection with a Georgia automobile accident.   Id. at 1231-32.   The attorneys failed to file suit before the limitations period ran, and the plaintiffs filed claims against the attorneys in Florida for professional negligence and breach of contract.   Id. at 1232.   The court found personal jurisdiction under section 1(b), noting that the attorneys had entered into a representation agreement with the plaintiffs and their Florida counsel which was governed by Florida law.   Id. at 1233, 1235-36.   However, Plaintiff in this case does not contend that its agreement with Dykema was governed by Florida law, and Plaintiff does not assert a claim for breach of contract.[6]

In Beta Drywall Acquisition, LLC v. Mintz & Fraade, P.C., 9 So. 3d 651 (Fla. 4th DCA 2009), Florida plaintiffs retained a New York law firm to form two Florida LLCs to acquire the assets of a Florida corporation.   Id. at 652.   Although most of the legal work was performed in New York, the tort of legal malpractice accrued in Florida because the firm caused allegedly faulty legal documents to be filed in Florida, injuring the plaintiffs' interests in the LLCs.   Id. at 653.   Here, by contrast, Plaintiff does not allege that Sternstein filed any legal documents in Florida or created any

---

[6] Plaintiff alleges that it executed a contract with Dykema in Florida, but provides no further facts or argument regarding the law governing that contract.  Plaintiff's execution of the contract in Florida does not itself invoke jurisdiction under section 1(b).  See, e.g., Hirsch v. Weitz, 16 So. 3d 148, 151 (Fla. 4th DCA 2009).

entity under Florida law.

The facts of this case are more congruent with those in <u>Hirsch v. Weitz</u>, 16 So. 3d 148 (Fla. 4th DCA 2009), where a Florida plaintiff alleged that a New York attorney's malpractice compromised the plaintiff's rights under a martial settlement agreement. <u>Id.</u> at 148-49. Although the plaintiff lived in Florida when he signed the agreement, the agreement was governed by New York law, and the agreement and final judgment of divorce were entered by a New York court. <u>Id.</u> at 151. The former wife brought suit in New York to recover under the agreement and obtained a money judgment in her favor, which she domesticated in Florida. <u>Id.</u>

Finding that any injury was sustained in New York when the former wife obtained a money judgment, the Florida appellate court concluded that Florida's long-arm statute did not confer jurisdiction because any legal malpractice tort accrued in New York. <u>Id.</u> The court declined to predicate jurisdiction on the attorney's allegedly negligent communications from New York to Florida, reasoning that to do so would permit "virtually any lawyer who communicated with a Florida resident regarding legal advice [to] be sued for legal malpractice in Florida." <u>Id.</u>

The present case is somewhat distinguishable from <u>Hirsch</u> in that Sternstein traveled to Florida on two occasions to meet with Plaintiff in connection with the underlying suit. However, section 1(b) does not necessarily confer jurisdiction over a nonresident attorney who enters Florida in connection with an out-of-state legal matter. <u>See, e.g.</u>, <u>Harris</u>, 831 So. 2d at 707-09. Moreover, Plaintiff's cause of action for legal malpractice did not accrue until Plaintiff settled the underlying suit. <u>See</u> <u>Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido</u>, 790 So. 2d 1051, 1054-55 (Fla. 2001). Plaintiff's settlement of claims brought in New Hampshire does not warrant a finding that Plaintiff

directly incurred damages in Florida.  See Hirsch, 16 So. 3d at 151.[7]  To the extent Plaintiff claims it was injured in Florida when it paid Defendants' attorney's fees and costs, Plaintiff has not shown that payment was the direct result of Sternstein's alleged negligence; indeed, Plaintiff presumably expected to pay these fees and costs if Sternstein was not negligent.  In any event, to justify jurisdiction based on a Florida client's payment of fees for a nonresident attorney's representation in an out-of-state matter would overextend the reach of section 1(b).  See Hirsch, 16 So. 2d at 151.

In sum, Sternstein's communications into Florida and two trips to Florida in the course of representing Plaintiff in an out-of-state matter are insufficient to subject him to personal jurisdiction under section 1(b).  See Hirsch, 16 So. 3d at 151-52; Harris, 831 So. 2d at 708; see, e.g., Koock v. Sugar & Felsenthal LLP, No. 8:09-CV-609-T-17EAJ, 2010 WL 1223794, at *4-5 (M.D. Fla. Mar. 25, 2010).  To hold otherwise under the circumstances of this case would impose personal jurisdiction over any nonresident attorney whose Florida client alleges malpractice in connection with an out-of-state matter.  See Hirsch, 16 So. 3d at 151.  "If the [Florida] Legislature intended for [section 1(b)] to encompass all tortious acts which were complete outside Florida but ultimately have consequences here only because a Florida resident suffers damages, ... it would be incumbent on the Legislature to make that statutory purpose clear in the plainest of language."  Korman, 821 So. 2d at 411.

Alternatively, Plaintiff contends that Sternstein is subject to this court's jurisdiction pursuant to section 1(a) of the long-arm statute, which provides for jurisdiction over a nonresident who

---

[7] The court recognizes that the damages in Hirsch resulted from an out-of-state judgment rather than a settlement of an out-of-state suit.  Nonetheless, neither the complaint nor the parties' affidavits indicate that the settlement directly injured Plaintiff in Florida anymore than an out-of-state judgment would have.

operates, conducts, engages in, or carries on a business in Florida. "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." Horizon, 421 F.3d at 1167 (citation and internal quotation marks omitted). "Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." Id. (citations omitted).

Emphasizing that Sternstein represented Plaintiff for almost three years in complex, multi-million dollar litigation, from which Sternstein anticipated and received millions of dollars in fees, Plaintiff submits that Sternstein was conducting a business in Florida. Again, the cases Plaintiff relies on for its position are distinguishable.

In Kim, the court found jurisdiction under section 1(a) because Georgia attorneys entered into representation contracts with Florida plaintiffs and a Florida attorney, intending for those contracts to be governed by Florida law. 71 F. Supp. 2d at 1234-36. As stated previously, Plaintiff in this case does not contend that its agreement with Dykema was governed by Florida law nor does it bring a claim for breach of contract.

In Pathman v. Grey Flannel Auctions, Inc., 741 F. Supp. 2d 1318 (S.D. Fla. 2010), a Florida plaintiff paid a nonresident broker of sports memorabilia $35,000 in exchange for a famous baseball player's jersey. Id. at 1321. After the jersey's authenticity was later questioned, the plaintiff filed suit against the broker in Florida, claiming fraudulent inducement and negligent misrepresentation. Id. The court found section 1(a) conferred jurisdiction because the broker traveled to Florida several

times each year to sell products, targeted advertisements at Florida, consistently placed telephone calls into Florida, sent catalogs identifying available items to ninety-one Florida registrants, and conducted six auctions over a two-year period in which 152 Florida registrants placed bids. Id. at 1323-24. Here, Sternstein's representation of non-party corporations registered in Florida or with offices in Florida did not involve traveling to Florida, working for or with anyone in the corporations' Florida offices, or otherwise coming into contact with Florida.

The facts in this case are materially indistinguishable from those in Horizon, where the Eleventh Circuit concluded that the record did not support jurisdiction under section 1(a). 421 F.3d at 1167. Although the defendant in that case directed communications into Florida across state lines and had six Florida clients, he did not maintain a Florida office, was not licensed to conduct business in Florida, performed all of his work for the plaintiff in California, and generated less than five percent of his gross revenue from his Florida clients. Id. Rendering out-of-state professional services for the benefit of a Florida citizen "was insufficient by itself to trigger the provisions of the Florida Long-Arm statute." Id. Here, Sternstein had at least four clients registered in Florida or with offices in Florida, but he did not have an office in Florida, was not licensed to practice law in Florida, and performed all of his work for these clients outside of Florida (with the exception of two visits to Florida to meet with Plaintiff). Neither the complaint nor the parties' affidavits suggest that Sternstein generated a substantial portion of his revenue from Florida clients.

Construing all inferences in favor of Plaintiff as the non-moving party, Plaintiff has failed to establish personal jurisdiction over Sternstein. Sternstein did not conduct a business in Florida by representing Plaintiff and three other corporations registered in Florida or with offices in Florida in connection with out-of-state matters. Although Sternstein communicated with Plaintiff on

numerous occasions, "correspondence alone is insufficient evidence that [Sternstein] conducted business in Florida." <u>Harris</u>, 831 So. 2d at 708.  Moreover, Sternstein's two trips to Florida to meet with Plaintiff over the course of almost three years do not reflect that he was conducting a business in Florida.  Consequently, section 1(a) does not provide for jurisdiction over Sternstein.[8]

<u>**Conclusion**</u>

Section 1(b) of Florida's long-arm statute does not confer jurisdiction over Sternstein for committing a tortious act in Florida.  Moreover, Sternstein did not operate, conduct, engage in, or operate a business in Florida as required for jurisdiction under section 1(a).  As Plaintiff has failed to satisfy its burden of proving that the long-arm statute otherwise provides for jurisdiction over Sternstein, Plaintiff's claim against Sternstein should be dismissed.[9]

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     Defendant Allen J. Sternstein's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 15) be **GRANTED**.

---

[8] The complaint additionally alleges jurisdiction under sections 1(g) and 2 of the long-arm statute (Dkt. 1 ¶ 6).  Section 1(g) provides for jurisdiction over a nonresident who "breach[es] a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]." Jurisdiction is not warranted under this section as there is no evidence that Plaintiff's contract with Dykema required Sternstein to perform acts in Florida.  <u>See</u> <u>Hirsch</u>, 16 So. 3d at 151-52.  Section 2 provides for general jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within [Florida]."  For the same reasons that section 1(a) does not provide for jurisdiction over Sternstein, section 2 does not either.  <u>See, e.g.</u>, <u>Horizon</u>, 421 F.3d at 1166 n.6; <u>Koock</u>, 2010 WL 1223794, at *3.

[9] As Plaintiff has failed to establish jurisdiction under the long-arm statute, there is no need to analyze whether assuming jurisdiction would "offend traditional notions of fair play and substantial justice."  <u>PVC Windoors</u>, 598 F.3d at 807.  It is also not necessary to determine whether Plaintiff's claim against Sternstein should be dismissed for improperly aggregating Sternstein's contacts with Dykema's contacts; the court has construed all reasonable inferences in Plaintiff's favor.

**Date:   July 8, 2011**

ELIZABETH A JENKINS
United States Magistrate Judge


## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  <u>See</u> 28 U.S.C. § 636(b)(1).


Copies to:
Counsel of Record
District Judge

15